WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alex Smith,<br><br>                    Plaintiff,<br><br>v.<br><br>Airbnb Incorporated,<br><br>                    Defendant. | No. CV-23-02541-PHX-SMM<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim. (Doc. 25). For the following reasons, the Court will grant the motion. Further, the Court will not grant leave to amend as it finds the deficiencies to be uncurable.

**I.    BACKGROUND**

Plaintiff, Alex Smith, runs a business promoting the listing of clients on leading travel portals, including the platform of Defendant, Airbnb Incorporated. On July 8, 2021, Plaintiff registered with GoDaddy.com the domain <airbnbseo.com>, for the business use described. Defendant is a community marketplace for people to list, discover, and book accommodations around the world. Defendant has rights in the AIRBNB mark through its registration with the United States Patent and Trademark Office ("USPTO") See, e.g., AIRBNB, Registration No. 3,890,025); (Doc. 25) at exhibit 1.

The dispute between Plaintiff and Defendant begun on October 30, 2023, when

Defendant initiated a Uniform-Name Resolution Policy (UDRP) proceeding to recover the domain <airbnbseo.com> from Plaintiff. The UDPR is a process, established by the Internet Corporation for Assigned Names and Numbers ("ICANN")[1] for the resolution of disputes regarding the registration of internet domain names. GoDaddy, the domain register for <airbnbseo.com> has implemented the UDPR. Uniform Domain Name Dispute Resolution Policy, GODADDY, https://www.godaddy.com/legal/agreements/domain-name-dispute-resolution-policy.

In accordance with the UDRP, the dispute was heard by FORUM, an alternative dispute resolution body that has been administering domain name disputes since 1999. At the Forum hearing, the assigned panelist found that the disputed domain name is confusingly similar to Plaintiff's mark, Defendant established prior rights in the distinctive AIRBNB mark, Plaintiff has no rights or legitimate interests in respect of the domain name, and that Plaintiff registered and used the domain name in bad faith. The panelist ordered GoDaddy to transfer the domain name from Plaintiff to Defendant. Ho-Hyun Nahm, Decision, Airbnb, Inc. v. Alex Smith, ADR FORUM, https://www.adrforum.com/DomainDecisions/2068708.htm.

Plaintiff then timely filed suit in this court to halt the ordered domain transfer. Plaintiff has amended his Complaint twice. Specifically, Plaintiff brings a claim of action under Arizona state law for unjust enrichment, several claims asserting a declaration that his registration of the domain does not violate the Anti-Cybersquatting and Consumer Protection Act ("ACPA") or otherwise infringe upon Airbnb's rights, and requests temporary and permanent injunctive relief stopping the domain transfer. Plaintiff also raises First Amendment and doctrine of laches concerns in the Complaint. However, such concerns seem to largely be copied and pasted into the Complaint without integration into his causes of action.

---

[1] ICANN is a nonprofit organization responsible for coordinating the maintenance and procedures of several databases related to the namespaces and numerical spaces of the Internet. Bylaws for Internet Corporation for Assigned Names and Numbers, a California Nonprofit Public Benefit Corporation, ICANN, https://www.icann.org/en/governance/documents/bylaws-for-internet-corporation-for-assigned-names-and-numbers-a-california-nonprofit-public-benefit-corporation-icann-17-11-2023-en.

## II. LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must "put defendants fairly on notice of the claims against them." McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991). While Rule 8 does not demand detailed factual allegations, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice." Id.

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating a motion to dismiss, a court will "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012).

## III. ANALYSIS

### A. ACPA Claims

Plaintiff's claims in counts two, five, and six can be boiled down to a claim for relief from the allegedly incorrect decision of the UDPR panel that ordered the transfer of the domain name to Defendant. The claims are asserted under the Anticybersquatting Consumer Protection Act ("ACPA"). Pub. L. No. 106-113, §§ 3001-10, 113 Stat. 1501 (1999). The ACPA amended the Lanham Act, 15 U.S.C. § 1051 et seq., which "protects the use of trademarks in interstate and foreign commerce." Shenzhen Big Mouth Techs. Co. v. Factory Direct Wholesale, LLC, No. 21-CV-09545-RS, 2022 WL 1016666, at *3 (N.D. Cal. 2022). The ACPA is codified in scattered sections of Title 15 of the United States Code, including 15 U.S.C. §§ 1114(2)(D) and 1125(d). See Mira Holdings, Inc. v.

Regents of Univ. of Cal., No. 618CV190ORL37GJK, 2018 WL 8244597, at *3 n.1 (M.D. Fla. 2018).

A primary purpose of the ACPA is "to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks – a practice commonly referred to as 'cybersquatting.'" S. Rep. No. 106-140, at 4 (1999). To balance the rights given to trademark owners against cybersquatters, the ACPA also provides some protection to domain name registrants against "overreaching trademark owners." Id. at 11; see 15 U.S.C. §§ 1114(2)(D)(iv)-(v).

One such protection is the "reverse domain name hijacking provision" of the ACPA, found in 15 U.S.C. § 1114(2)(D)(v).[2] See Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC, No. CV-12-01156-PHX-DJH, 2015 WL 12602438, at * 6 (D. Ariz. May 15, 2015). This statute provides that:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1142(D)(v). Therefore, the Court is asked to determine whether Plaintiff has plausibly plead that the use of the disputed domain name did not violate the ACPA. To show that his conduct is not unlawful under § 1125(d)(1), Plaintiff must "prove either (1) they did not register, traffic, or use a domain name that is identical or confusingly similar to a distinctive mark, or (2) they did not have a bad faith intent to profit from that mark."

---

[2] As the Fourth Circuit stated in Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona, 330 F.3d 617, 625 n. 1 (4th Cir. 2003):

> If a domain-name registrant cybersquats in violation of the ACPA, he "hijacks" the domain name from a trademark owner who ordinarily would be expected to have the right to use the domain name involving his trademark. But when a trademark owner overreaches in exercising rights under the ACPA, he "reverse hijacks" the domain name from the domain-name registrant. Thus, § 1114(2)(D)(v), enacted to protect domain-name registrants against overreaching trademark owners, may be referred to as the "reverse domain name hijacking" provision.

Strong Coll. Students Moving, 2015 WL 12602438, at *8 (citing § 1125(d)(1)(A)(i)-(ii)); see also Mira Holdings, 2018 WL 8244597, at *3 ("If the registrant 'has a bad faith intent to profit' from an owner's mark and registers a domain name that 'is identical or confusingly similar' to a mark distinctive at the time the registrant registered the domain name, such is considered unlawful under the ACPA."): GoPets Ltd. v. Hise, 657 F.3d 1024, 1030 (9th Cir. 2011) ("To prevail on its ACPA claim, [a party] must show (1) registration of a domain name, (2) that was 'identical or confusingly similar to' a mark that was distinctive at the time of registration, and (3) 'bad faith intent' at the time of registration.") (quoting § 1125(d)(1)); Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1197-1202 (9th Cir. 2009) (noting that distinctiveness and bad faith are required to sustain an ACPA claim).

First, the Court finds that Plaintiff has failed to plead a claim that plausibly alleges that Plaintiff did not register, traffic, or use a domain name that is identical or confusingly similar to a distinctive mark. As an initial matter, its undisputed that Plaintiff registered the disputed domain name, as evident by Plaintiff's own admissions. See (Doc. 17) at ¶ 6. Additionally, Defendants' mark is distinctive, as evidenced by its registration with the USPTO. See 15 U.S.C. § 1115(a) (stating that PTO registration is "prima facie evidence of the validity of the registered mark"); see also, Lahoti, 586 F.3d at 1199 (stating that registration alone may be sufficient to find a mark to be distinctive.).

As Defendant's mark is distinctive, the question turns to whether the disputed domain name is identical or confusingly similar to the mark. "In determining whether there is confusing similarity under the ACPA, courts compare the [ ] mark with the name of the website." Super-Krete Int'l v. Sadleir, 712 F.Supp. 2d 1023, 1031 (C.D. Cal. 2010). The Court finds that the question is answered in the affirmative, as the disputed domain name, <airbnbseo.com> incorporates Defendant's mark, AIRBNB. The fact that the disputed domain name adds the acronym "SEO" to the end, which stands for "search engine optimization," does not change the fact that the disputed domain name is confusingly similar to Defendant's mark. Yuga Labs, Inc. v. Ripps, No. CV 22-4355-

JFW(JEMX), 2023 WL 3316748, at * 6 (C.D. Cal. 2023); See, e.g., Coca-Cola Co. v. Purdy, 382 F.3d 774, 783 (8th Cir. 2004) (affirming district court's finding that domains "mywashingtonpost.com," "mymcdonalds.com," and "drinkcoke.org" were confusingly similar to the Washington Post, McDonald's, and Coke marks); see also, Haas Automation v. Denny, 2013 WL 6502876, at * 3 (C.D. Cal. 2013) (finding confusing similarity where domain names all contained the plaintiff's mark 'haas' "plus some additional term or terms," such as haasplus.com, haasmillparts.com).

Next, the Court finds that Plaintiff has failed to plead a claim that plausibly alleges that Plaintiff did not have a bad faith intent to profit from the use of Defendants' mark. Plaintiff advances several theories as to why his complaint adequately alleges a lack of bad faith: nominative fair use, statutory fair use, the bad faith factors set forth in 15 U.S.C. § 1125(d)(1)(B), and the ACPA's safe harbor provision found in 15 U.S.C. § 1125(d)(1)(B)(ii). Each theory advanced by Plaintiff fails to plausibly allege a lack of bad faith.

First, Plaintiff asserts that the nominative fair use defense protects his use of the disputed domain name. This argument fails as a matter of law, as nominative fair use "does not bear on whether the disputed domain names run afoul of the ACPA." Haas Automation, Inc, 2013 WL 6502876 at *6.

Second, Plaintiff asserts that statutory fair use prevents a finding of bad faith under 15 U.S.C. § 1115(b)(4). This defense against a finding of bad faith is available when "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods." 15 U.S.C. § 1115(b)(4). This defense fails on its face, as Plaintiff asserts a property right in the disputed domain name. See, e.g., (Doc. 17) at ¶ 28, 31, 33, and 73.

Next, Plaintiff argues that the ACPA bad faith factors do not indicate a lack of bad faith. Under this analysis, courts consider nine nonexclusive factors in determining whether bad faith intent to profit exists. 15 U.S.C. § 1125(d)(1)(B)(i)-(ix). "Courts need

not march through the nine factors seriatim because their use is merely permissive and the most important grounds for finding bad faith are the unique circumstances of the case." IFIXITUSA LLC v. iFixit Corp., No. CV-21-00887-PHX-DGC, 2022 WL 2117845, at * 4 (D. Ariz. 2022) (quotations omitted). The factors are as follows:

> 1) whether the registrant owns any independent trademark or other intellectual property rights in the domain name; 2) whether the domain name comprises the registrant's legal name or a name commonly associated with that person; 3) whether the registrant used the domain name to offer bona fide goods or services; 4) whether the registrant made bona fide noncommercial or fair use of the mark on the website to which the domain name resolves; 5) whether the registrant intended to divert customers from the mark owner's website for commercial gain or with the intent to dilute the mark or create a likelihood of confusion; 6) the registrant's offer to transfer, sell, or otherwise assign the domain name for financial gain; 7) the registrant's use of material and misleading false contact information for the domain name; 8) the registrant's registration or acquisition of multiple infringing domain names; and 9) whether the mark incorporated in the domain name is distinctive or famous.

See 15 U.S.C. §1125(d)(1)(B).

Using these factors, the Court finds that Plaintiff's own statements in his Second Amended Complaint show bad faith by Plaintiff. First, Plaintiff does not at any point plausibly allege that he owns an intellectual property interest in the domain name, past the conclusory statement that he "has legal right to use" the domain name. (Doc. 17) at ¶ 54. The Court disregards such conclusory statements in ruling on a motion to dismiss. Further, Plaintiff states that while his company served the broader travel industry, he specifically leveraged Defendant's brand to "communicate[ ] the nature of his service in an industry where online visibility is paramount." (Doc. 17) at ¶ 30. This further shows Plaintiff's own admission as to the distinctiveness and fame of Defendant's mark and his attempt to use such distinctiveness and fame for his own commercial purposes. Finally, Courts have consistently found an intent to divert for commercial gain when a party registers a domain name with a minor variation to an existing trademark. See GoPets v. Hise, 657 F.3d 1024, 1033 (9th Cir. 2011) (finding that "it is clear that [domain registrant] intended the Additional Domains [including , and among others] 'to divert

consumers from the mark owner's online location to a site accessible under [these] domain name[s] ... by creating a likelihood of confusion.'"); See also, Super-Krete Int'lr, 712 F. Supp. 2d at 1033 (finding bad faith where "Defendants only interest in the domain name [ ] is to divert customers who may have been searching for Plaintiff's mark to their own commercial website"). Based on Plaintiff's own omissions, the Court finds that Plaintiff has failed to plausibly allege a lack of bad faith based on the enumerated ACPA bad faith factors.

Finally, Plaintiff argues that the ACPA safe harbor provision, codified at 15 U.S.C. § 1125(d)(1)(B)(ii), prevents a finding of bad faith. The safe harbor provisions provides that even when the previously stated factors show bad faith, bad faith will not be found when "the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

The Court does not find the safe harbor to plausibly protect Plaintiff. The safe harbor "protects uses such as parody and comment[ ] and use by persons ignorant of another's superior right to the mark." DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1220 (9th Cir. 2010). Neither are implicated in this case, as the Plaintiff has not plead a use of the domain for parody or comment purposes, nor could Plaintiff plausibly allege that he was ignorant of Defendant's superior right to the mark. Plaintiff, by his own admission, used Defendant's mark to associate with the industry of which Defendant is apart, thereby recognizing the superior right of Defendant. Also to note, courts are instructed to make sparing use of the safe harbor in negating a party's bad faith. Lahoti, 586 F.3d at 1202. The Court does not find such rare circumstances to be present in this case.

Therefore, as the Court finds that Plaintiff has failed to plausibly allege that his use of the disputed domain name did not violate the ACPA, the Court will grant the motion to dismiss with respect to the counts centering on the ACPA. The Court will not grant leave to amend, as it does not find the "pleading could not possibly be cured by the allegation of other facts.'" Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

omitted).

## B. Unjust Enrichment Claim

Defendant asserts that Plaintiff's claim alleging unjust enrichment must be dismissed. "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." Trustmark Ins. Co. v. Bank One, Arizona, NA, 48 P.3d 485, 491 (Ariz. Ct. App. 2002), as corrected (2002) (citing City of Sierra Vista v. Cochise Enter., Inc., 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984)). To state a claim for unjust enrichment, a Plaintiff must plead (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; (5) the absence of a legal remedy. Id.

Defendant asserts that Plaintiff has not plausibly plead that Defendant has received any unjustified benefit at Plaintiff's expense. First, the Defendant argues that the domain transfer will not occur until the conclusion of the suit, therefore there has been no benefit to Defendant. Secondly, the transfer would be in accordance with the UDPR which is, by its definition, justified. Plaintiff asserts that the benefit conferred would be the cost incurred by Plaintiff to register the domain name. Further, Plaintiff argues that an unjust enrichment claim does not require a wrongdoing by the Defendant.

The Court finds that Plaintiff has not plausibly plead a claim for unjust enrichment. As the Court finds above, the Plaintiff has not plead a claim that plausibly asserts that the transfer of the domain is not justified under the law. Since a claim for unjust enrichment requires a showing that there is an "absence of justification for the enrichment," Plaintiff does not state a claim upon which relief may be granted. The Court will grant the motion to dismiss as to the unjust enrichment claim. The Court further does not grant leave to amend, as the count is barred by law.

## C. Remaining Claims

The Court finds that Plaintiff's remaining causes of action do not state cognizable claims. The claims for temporary injunctive relief and permanent injunctive relief appear

to be brought incorrectly as independent claims of action, rather than the relief Plaintiff requests this Court to grant.

Plaintiff additionally includes in his Complaint statements of law discussing the First Amendment and the equitable doctrine of laches. The Court does not find such legal contentions to have been properly plead to connect to a theory of recovery for Plaintiff, and even if they had been, the Court does not find that the Plaintiff has plausibly alleged a violation of his First Amendment rights, or applicability of the doctrine of laches.

### D. Conclusion

For the preceding reasons, the Court grants Defendant's Motion to Dismiss. The Court will not grant leave to amend, as the Court finds that the claims are either barred by law or are uncurable by further amendments.

Accordingly,

**IT IS ORDERED granting** Defendant's Motion to Dismiss. (Doc. 25)

**IT IS FURTHER ORDERED dismissing** Plaintiff's Second Amended Complaint, with prejudice. (Doc. 17).

**IT IS FURTHER ORDERED directing** the Clerk of the Court to terminate this action.

Dated this 18th day of December, 2024.

_____
Stephen M. McNamee
Senior United States District Judge